**KELLY, WEBER & CO., Inc., v. METCALF (SABINE STATE BANK & TRUST CO., Intervener).**

**No. 5549.**

Court of Appeal of Louisiana. Second Circuit.

Dec. 3, 1937.

John B. Hill, of Many, for appellant.

R. A. Fraser, of Many, for appellee.

DREW, Judge.

Kelly, Weber & Co., Incorporated, plaintiff herein, caused a fieri facias to be issued on a judgment it held against W. J. Metcalf. It made the sheriff of Sabine parish garnishee, and there was seized in his hands the sum of $310 alleged to belong to Metcalf.

The Sabine Bank & Trust Company intervened, claiming to be the owner of the $310 held by the sheriff; that it was placed in the hands of the sheriff by the agent of one C. D. Spradley to be paid to intervenor. It further alleged:

"Intervenor avers that on the 7th day of November, 1935, W. J. Metcalf sold to C. D. Spradley cattle of the value of Three Hundred Ten and No/100 ($310.00) Dollars, for which the aforesaid C. D. Spradley delivered to aforesaid W. J. Metcalf, his check in the amount of Three Hundred Ten and No/100 ($310.00) Dollars in payment of same; that said

check was paid to intervenor by aforesaid C. D. Spradley and W. J. Metcalf, to be credited on the mortgage note due intervenor by aforesaid W. J. Metcalf, the aforesaid note being secured for payment by Act of Chattel Mortgage on the aforesaid cattle that were sold by the said W. J. Metcalf to the said C. D. Spradley, for the aforesaid Three Hundred Ten and No/100 ($310.00) Dollars, said mortgage being dated June 6th, 1935, passed and executed before William H. Ponder, Notary Public in and for the Parish of Sabine, Louisiana, certified copy of which is hereto attached and made a part hereof.

"That at the time of the sale of aforesaid cattle as aforesaid, the aforesaid C. D. Spradley and W. J. Metcalf agreed with your intervenor that the total amount of purchase price, the Three Hundred Ten and No/100 ($310.00) Dollars, as aforesaid, was to be paid to said intervenor, the said Sabine State Bank & Trust Company, and the check representing such balance was actually delivered and paid to your intervenor, pursuant to said agreement.

"Intervenor further represents that the check paid for the purchase price of aforesaid cattle, after being credited on the mortgage note as aforesaid, was dishonored and payment not made. Whereupon, thereafter, a warrant was issued for the arrest of the aforesaid C. D. Spradley, for issuing a check for value without sufficient funds or credit to pay said check; after the arrest of the aforesaid C. D. Spradley in Oklahoma, on said warrant of arrest, on said charge, aforesaid C. D. Spradley proposed to the intervenor, said Sabine State Bank & Trust Co., that he would deliver to the Sheriff of Sabine Parish, D. J. Derrick, funds sufficient to pay off the account due the Sabine State Bank & Trust Company, for the purchase of the cattle upon which the Sabine State Bank & Trust Company held a Chattel Mortgage, as aforesaid, being in the amount of Three Hundred Ten and No/100 ($310.00) Dollars, as aforesaid, which said proposal was carried out by the said C. D. Spradley, delivering to said D. J. Derrick, Sheriff of Sabine Parish, the Three Hundred Ten and No/100 ($310.00) Dollars, to be paid to your intervenor, as aforesaid.

"Intervenor herein, said Sabine State Bank & Trust Company, further represents and pleads in the alternative, and

in the alternative only, that in the event the Court should hold that said intervenor is not the owner of the Three Hundred Ten and No/100 ($310.00) Dollars in the hands of the Sheriff of Sabine Parish, the said D. J. Derrick, then, in that event, intervenor pleads that they have a first lien and privilege on aforesaid money, by reason of their Chattel Mortgage on the cows sold and for which the aforesaid Three Hundred Ten and No/100 ($310.00) Dollars is due as purchase price; and for the further reason that the aforesaid C. D. Spradley, purchaser, and W. J. Metcalf, seller, agreed with your intervenor that aforesaid funds were to be paid to your intervenor, for credit on the aforesaid mortgage note secured by the aforesaid mortgage, dated as aforesaid."

Plaintiff's answer to the petition of intervention was a general denial.

On these issues, the trial was had below, resulting in a judgment for plaintiff and rejecting the demands of intervener. The lower court, in a lengthy written opinion, clearly states the true facts in the case, with a few exceptions, which we will point out. Its opinion is as follows:

"The above numbered and entitled cause was taken up, tried, argued and submitted and was taken under advisement by the court.

"The plaintiff, Kelly, Weber & Co. Inc. had caused to issue a Writ of fieri facias and seized thereunder Three Hundred and Ten Dollars in the hands of D. J. Derrick, Sheriff of Sabine Parish, La., which money is contended by the Kelly, Weber & Co. Inc. to belong to one J. W. Metcalf, defendant in the above numbered and entitled cause.

"The Sabine State Bank & Trust Co., Intervenor herein held a blanket chattel mortgage against a large number of cattle owned by the said J. W. Metcalf or any and all cattle that are owned and possessed by the said J. W. Metcalf at the date of mortgage, which was March 13, 1929. The amount of the mortgage note was the sum of five thousand dollars.

"On Nov. 7, 1935, J. W. Metcalf sold sixty-eight head of cattle that were supposed to be covered by the above mortgage, but which is not clear as to whether or not they were the same cattle that had been mortgaged six years before. The sale was made to Spradley & Brittain for the sum of two thousand and fifty-seven

dollars for which amount the said Spradley & Brittain gave to J. W. Metcalf their check drawn on the Farmers State Bank of Center, Texas. The check was endorsed W. J. Metcalf, who is the same person as the said J. W. Metcalf and placed in or deposited with the Sabine State Bank & Trust Co. for collection. The check was not paid by the Farmers State Bank, but was returned unpaid to the Sabine State Bank & Trust Co.

"Subsequent to the dishonor and return of the check to the Sabine State Bank & Trust Co., Spradley paid to Metcalf on the above mentioned check at one time sixteen hundred dollars, and at another time one hundred dollars, and another time forty-eight dollars. All of these payments amounting to seventeen hundred and forty-eight dollars. During this time Metcalf paid to the Sabine State Bank & Trust Co., only the sum of three hundred dollars. It appears to be a fact that if the check in question had been paid the Sabine State Bank & Trust Co. would have given J. W. Metcalf or W. J. Metcalf credit on his chattel mortgage note; however since the check was not collected the Sabine State Bank & Trust Co. did not give Metcalf any credit on his note for the check.

"Since the above payments were made to Metcalf there remained due and unpaid on the check given to Metcalf by Spradley & Brittain the sum of three hundred and ten dollars. It seems that Metcalf or somebody obtained from the Sabine State Bank & Trust Co. the unpaid check for two thousand and fifty-seven dollars and presented the same to the Grand Jury of Sabine Parish, La. Spradley was indicted by the Grand Jury for giving a worthless check in violation of the law. While the charge was pending against him he came to Many, La. His attorney, J. R. Boone, in company with him had a conference with Judge W. H. Ponder who was at that time the attorney for the Sabine State Bank & Trust Co. It seems that it was understood that the Sabine State Bank & Trust Co. was to be paid the balance due on the check of Three Hundred and Ten Dollars which if paid at that time would have been credited by the bank on the note due it by Metcalf. According to Judge Ponder's testimony, which is admitted to be correct, Spradley agreed to make payments from time to time on the Three Hundred and Ten Dollars, but never

did so. Spradley was later arrested in Oklahoma, and he called Judge Ponder over long-distance telephone and was informed by Judge Ponder that he was no longer attorney for the bank, but was now district judge, and that he would have to take the matter up with Mr. Knott and the Bank. Spradley also phoned Mr. Knott and wanted to pay the balance due of the Three Hundred and Ten Dollars or to do what was necessary in order to get the charges against him dismissed. It seems that Mr. Knott did not know about the indictment nor did he know that the matter would be dropped upon the payment of the Three Hundred and Ten Dollars. All Mr. Knott or the Bank was concerned about was the receiving the Three Hundred and Ten Dollars and if he had done so he would have credited the account of Metcalf with the said amount.

"After Mr. Spradley was arrested in Oklahoma, the Sheriff of Panola County, Texas, called D. J. Derrick, Sheriff of Sabine Parish, La., and stated that he was talking for Mr. Spradley and said that he wanted to settle the case in court. Mr. Derrick talked to Mr. Edwin Fraser, District Attorney, who stated that it was agreeable to him, the District Attorney, and Mr. Metcalf to drop the charges upon the payment of the Three Hundred and Ten Dollars and cost. The money was sent to D. J. Derrick, Sheriff of Sabine Parish, La., to pay the balance on the Three Hundred and Ten Dollars and cost. As soon as the money reached the Sheriff or just prior thereto, the plaintiff, Kelly, Weber & Co. Inc., obtained a Writ of Fieri Facias against W. J. Metcalf and caused a Writ of Garnishment to issue directed to D. J. Derrick, Sheriff of Sabine Parish, La., as a holder of the Three Hundred and Ten Dollars paid by Spradley in settlement of the charge against him. When Mr. Metcalf called to see the Sheriff to obtain the money, he was served or handed a copy of the proceedings of the plaintiff against him and the Sheriff.

"After the money was garnisheed as the funds belonging to Metcalf, the Sabine State Bank & Trust Co., filed this intervention and third opposition claiming to be the owner by virtue of a check given by Spradley to Metcalf in the amount of Three Hundred and Ten Dollars. In the alternative, if the Court should find it was not the owner of the Three Hundred

and Ten Dollars, then, in that event that it should be given first lien and privilege against said funds and paid the amount of same as they were holder and owner of a chattel mortgage against the cattle sold by Metcalf to Spradley and Brittain.

"In order to more correctly state the facts as related on the trial of the intervention and third opposition, certain evidence taken on the trial is herein stated:

"Mr. W. M. Knott on page five of the transcript, on his direct examination, gave the following testimony:

"Q. 'I will ask you whether or not the bank has been the owner of this check and the proceeds thereof, ever since the date it was delivered to you by W. J. Metcalf?' A. 'Well, I don't know whether it would be considered the ownership or not. The situation is this. When Mr. Metcalf delivered the check to us, we made an effort to collect it and the proceeds were to be credited on his note, but the check came back, therefore, the check was not credited on the note, because—'

"Continuing the testimony of the same witness, on page seven, he testifies as follows:

"Q. 'Mr. Knott, what did he tell you—what was the purpose of his calling you?' A. 'He told me over the telephone that he was arrested there and that he owed a Three Hundred and Ten Dollar balance on this check, and he asked me if he could have the check paid to be delivered to the Sheriff here, and be released. I suppose he meant from the indictment. I told him that I didn't know about that part of it, that so far as we were concerned, the Three Hundred and Ten Dollars was what we were looking for. He said that he had a job there, and that he had just gotten the job and if he was brought back here, that he would lose his job and would not be in a position to pay it. That is what he told me over the telephone.'

"Mr Knott, on cross-examination, beginning on page eight and continuing on page nine, testified as follows:

"Q. 'You don't know whether he sent the money on what you told him or whether he got other information?' A. 'No, I don't know that.'

"Q. 'Mr. Knott, Mr. Metcalf was engaged in the cattle business in Sabine Parish and other parishes, was he not?' A. 'Yes.'

"Q. 'And you had a blanket chattel mortgage that was supposed to cover all cattle that he owned?' A. 'Yes.'

"Q. 'Sometime in the fall of 1935 he made a rather large sale to Spradley & Brittain, didn't he?' A. 'Yes.'

"Q. 'And this check was put in your Bank and was to be credited on Mr. Metcalf's note, when it was paid?' A. 'Yes.'

"Q. 'That check has never been paid?' A. 'No.'

"Q. 'And Metcalf did not get credit on that note for the check, did he?' A. 'No.'

"Q. 'Then all credits on Metcalf's note were made at other times and for other sums and amounts? He has never been credited with this amount?' A. 'No.'

"Q. 'Has he ever been credited with the Three Hundred Ten Dollars now in the hands of the Sheriff?' A. 'No, but we hope to give him credit.'

"Q. 'At the time the Two Thousand Fifty-seven Dollar check was deposited, was any credit made on the note, or did you take the check for collection?' A. 'We took the check for collection.' "

On re-cross examination, on pages nine and ten, the witness testified as follows:

"Q. 'I notice this check for Two Thousand Fifty-seven dollars was brought into Court by the Clerk, pinned to the indictment against Spradley. You don't mean to say that you have had possession of this paper since it was issued?' A. 'No.'

"Q. 'It was returned and put in Court by whom?' A. 'We have not had the check in our possession.'

"Q. 'You did not appear before the Grand Jury and present it?' A. 'No.'

"On cross-examination, pages twenty, twenty-one, and twenty-two, Mr. Metcalf, a witness on behalf of the plaintiff, testified in part as follows:

"Q. 'After the check had come back and had been dishonored, they did begin to make payment to you on the sale price of the cattle?' A. 'Yes.'

"Q. 'They first paid you sixteen hundred dollars in a cashier's check?' A. 'Yes.'

"Q. 'Then later paid Forty-eight Dollars at Zwolle, Louisiana?' A. 'Yes.'

"Q. 'Then later at Carthage or Center, Texas, young Spradley paid you One Hundred Dollars?' A. 'Yes.'

"Q. 'That left approximately Three Hundred Ten Dollars on the Two Thousand Fifty-seven Dollar check?' A. 'Yes.'

"Q. 'Now later you had young Spradley arrested on a warrant issued at Zwolle?' A. 'Yes.'

"Q. 'For the balance of Three Hundred Ten Dollars?' A. 'Yes.'

"Q. 'And later he was indicted and the check for Two Thousand Fifty-seven Dollars was presented to the Grand Jury and clipped to the indictment?' A. 'Yes.'

"Q. 'Mr. Metcalf, you have never received credit from the Sabine State Bank & Trust Company for this Three Hundred and Ten Dollars?' A. 'No, sir.'

"Q. 'You intend to have it applied when received by you upon the note you owe?' A. 'Yes, it was turned over to the Bank.'

"Q. 'And they are to credit your note with whatever amount they collected from Spradley?' A. 'Yes.'

"Q. 'They didn't credit your note with the total amount at that time, but had an agreement with them that they were to credit you with all they received, is that correct?' A. 'Yes.'

"On cross and direct examination on pages twenty-five, twenty-six, and twenty-seven, the witness, Mr. D. J. Derrick, testified as follows:

"Q. 'He meant the check?' A. 'Yes, he wanted to settle the case in court, and at that time I told him I didn't have authority to do that, and I called Mr. Fraser between that time and talked to him and then called back.'

"Q. 'Mr. Edwin Fraser, the District Attorney?' A. 'Yes, and he had come to an understanding with Mr. Metcalf I understand, and Mr. Rainy Travis was on the bond and Mr. T. Laroux, but Mr. Fraser informed me that he and Mr. Metcalf agreed that if the man could pay the Three Hundred Ten Dollars and the cost of apprehending him that they would turn him loose, so I called back and told the Sheriff of Panola County what it would take to clear up the case, the Three Hundred Ten Dollars here; if they could collect their share on that end of the line, that was the charges here. So he said the man could not get the money, I believe that is what he said, the best I can remember. Now the Sheriff in Carthage called me, and wanted to know what it would take to settle the charge, and I told him Three Hundred Ten Dollars was all that we held against him down here, but I didn't know what the charges were in Oklahoma, that he was back up there, and he said that his father is here and wants to

give me the money to pay it. I told him that the only thing I knew to tell him was to call back to Oklahoma and find out their costs up there, if any, and tell Mr. Spradley if he would be responsible for the costs, to leave it with him and leave the Three Hundred Ten Dollars in his hands to be sent to me by him, and I would accept it, and they agreed to do that. That is all I know.'

"Q. 'Did he send the Three Hundred Ten Dollars?' A. 'Yes.'

"Q. 'That is the Three Hundred Ten Dollars in litigation here?' A. 'I suppose it is from what I understand about the suit.'

"Cross Examination

"Q. 'After that, did Mr. Metcalf come to your office to get the Three Hundred Ten Dollars?' A. 'Yes.'

"Q. 'Did you notify him about the seizure in your hands?' A. 'Yes, sir. If I am not mistaken, the check was garnisheed before I received it. I think I was served before the check came in. I was also handed a citation to serve on Mr. Metcalf, and when the check came I knew Mr. Metcalf would come after it and so I wasn't in a hurry to make service on him and as he came in I served notice on him.'

"Q. 'You then served the garnishment on him?' A. 'Yes.'

"Q. 'You did not have any dealings with the Sabine State Bank and Trust Company?' A. 'No, not anybody except Mr. Metcalf and Mr. Fraser, the District Attorney, to accept the Three Hundred Ten Dollars and my costs.'

"Q. 'You mean the Mr. Fraser that is District Attorney when you say Mr. Fraser?' A. 'Yes.'

"In view of the pleadings and the evidence as a whole, taken on the trial of the above numbered and entitled cause, it is my opinion that the claim of the intervenor does not come under article 2642 of the Civil Code. The article of the Civil Code reads as follows:

"'In the transfer of credits, rights or claims to a third person, the delivery takes place between the transferer and transferee by the giving of the title.'

"According to the evidence of Mr. Knott and Mr. Metcalf, there has never been a transfer of title to the check of two thousand and fifty-seven dollars. There has never been any credit given Metcalf by the Bank on his note, nor has there been any consideration paid for the check whatsoever. The court was impressed by the

clear-cut truthful statements made by the intervenors. The court accepts this testimony as correct, which, in my opinion, shows the Bank has never been the owner of the check in question. The agreement made and entered into in Judge Ponder's office was never fulfilled and therefore, in my opinion, there was no transfer of the Three Hundred and Ten Dollars to the Sabine State Bank & Trust Company.

"The case of De Soto Mercantile Company, Inc. v. Sabastian, 10 La.App. 419, 121 So. 664, does not apply to the facts of this case for the reasons that the plaintiff in that case had acquired the check sued on for a valuable consideration.

"It is true under the law that the least of a thing is included in the greater. However, that does not mean that one can allege that he is a holder and owner of a certain described check amounting to Three Hundred and Ten Dollars, when in fact, his ownership, if any, is by virtue of the authority of an agent to collect a check for Two Thousand and Fifty-seven dollars. It is my further opinion that the Three Hundred and Ten Dollars, in hands of the Sheriff, has not been properly identified with the description of the cattle mortgaged to the Bank in 1929, which would justify the Court in recognizing the lien and privilege prayed for in the alternative demand of the Sabine State Bank and Trust Company. It is my opinion that the garnishment and seizure by Kelly, Weber and Company, Inc., of the Three Hundred and Ten Dollars in the hands of D. J. Derrick, should be sustained, as the money belonging to W. J. Metcalf.

"For the reasons above set forth, and the further reasons Metcalf collected the payments on the check and was going to collect the Three Hundred and Ten Dollars if same had not been seized, which shows that Metcalf had at all times retained ownership of the check for two thousand and fifty-seven dollars, or any amount that was due for the balance of the purchase price of the cattle sold by him to Spradley and Brittain. Therefore, it is my opinion that the demands of the intervenor should be rejected. It is my further opinion that W. J. Metcalf should pay all cost of this suit.

"For the reasons above set forth, and the law and evidence being in favor of Kelly, Weber and Company, Inc., and against the Sabine State Bank and Trust Company, W. J. Metcalf, and D. J. Derrick, it is therefore ordered, adjudged and de-creed that Kelly, Weber and Company, Inc., do have and recover judgment against the Sabine State Bank & Trust Company, Intervenor, W. J. Metcalf and D. J. Derrick, Sheriff of Sabine Parish, Louisiana, sustaining the Writ of Garnishment and Seizure of the Three Hundred and Ten Dollars in the hands of the said D. J. Derrick and ordering him to pay said amount to Kelly, Weber and Company, Inc., to apply on their judgment in the above numbered and entitled cause. It is further ordered that Kelly, Weber and Company, Inc., do have and recover judgment against the Sabine State Bank and Trust Company, Intervenor, rejecting their demands in this suit. It is further ordered that W. J. Metcalf do pay all cost of this suit.

"Thus done, rendered, read and signed in chambers by consent of all parties at Mansfield, Louisiana, on this 2nd day of June, 1937.

"Hal A. Burgess
"Judge."

The lower court was in error when it stated that 68 head of cattle were sold. It should have said 168 head. It was likewise in error in saying that in the period of time between the giving of the check and final settlement thereon that Metcalf only paid to the bank $300. The record shows he paid $3,000. These errors, however, are immaterial to a proper determination of the case.

The lower court was correct in finding that the cattle sold by Metcalf were not identified as being covered by the chattel mortgage held by intervener and in rejecting intervener's claim for a lien against the funds in the hands of the sheriff.

There is no evidence to justify us in finding that intervener was the owner of the dishonored check, upon which the $310 seized, was applied. Both Metcalf, the payee, and Mr. Knott of the intervener bank, testified unequivocally that the check was placed with the bank for collection. When it was dishonored, it was returned to Metcalf. There is no evidence that the intervener ever made any attempt to collect the check. It knew nothing of the criminal prosecution used by Metcalf to collect it. It is not shown that Metcalf was an agent of the intervener in making collections on the check.

When Metcalf was asked if he turned over to the intervener the amounts of $1,600, $100, and $48, when he collected them from the maker of the check, he answered

450

by saying he had paid $3,000 on his indebtedness to the bank. Intervener was never willing to accept the check, and give Metcalf credit for it on his indebtedness, and never did. It merely had the check for collection, and, if it had been paid, it would have then given Metcalf credit. When it was dishonored, it was turned back to Metcalf. It was not a transfer of a credit, as is provided for by article 2642 of the Revised Civil Code.

■ Intervener complains here of the lower court admitting the testimony of Spradley, the maker of the check, whose testimony was taken by deposition. Many grounds are urged to show that it was inadmissible. It is, however, unnecessary to discuss it, for the reason the lower court did not take into consideration this testimony in arriving at its decision, and we have not considered it in arriving at a decision here.

The testimony offered by intervener is sufficient to show that it was not the owner of the check in question.

We find no error in the judgment of the lower court, and it is affirmed, with costs.